FRANK EMMET REAL ESTATE,
INC., Appellant,

v.

Thomas MONROE, Appellee.

No. 87–976.

District of Columbia Court of Appeals.

Argued Dec. 15, 1988.
Decided July 28, 1989.

Sheldon P. Schuman, Bethesda, Md., for appellant.

Ronald L. Webne, Alexandria, Va., for appellee.

Before ROGERS, Chief Judge, and MACK and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This is an appeal from the granting of a motion to vacate a default judgment for possession of premises leased from appellant Frank Emmet Real Estate, Inc. (hereinafter "Landlord").[1] The main issue before us deals with the adequacy of the service of process made on appellee. We affirm.

I

The facts, which are essentially undisputed, are as follows: Appellee Thomas Monroe entered into a lease with Landlord for premises located at 800 Randolph Street, N.E., Washington, D.C. He occupied the premises from January 1976 until August 1985, at which time he moved to Pueblo, Colorado. Appellee notified the Landlord that, although he would no longer be residing at the leased premises, he wished to retain his lease. He left the District because he "had an opportunity [in Colorado] to get certification as a drug and alcohol counselor and to finish a teaching certificate," and intended to return to the District thereafter. Landlord does not dispute the fact that it was expressly notified of appellee's exact address and telephone number in Colorado.

On March 13, 1987, Landlord brought suit for summary eviction for nonpayment of rent. Although Landlord knew appellee's exact address in Colorado, it nonetheless served process solely by posting a

---

1. Since, as will be indicated, the trial court's order here had the effect of removing Landlord from possession of the leased premises and restoring Tenant to possession, the order vacating the default judgment is an appealable interlocutory order under D.C.Code § 11–721(a)(1)(C) (1981). *See Jenkins v. Parker,* 428 A.2d 367, 369 (D.C.1981).

copy of the summons on the door of the leased premises on Randolph Street,[2] and mailing a copy of the summons to the address of the leased premises, as provided for by D.C.Code § 16–1502 (1981). Landlord did not testify at the hearing before the trial court, nor was it argued before us, that it believed that the Randolph Street premises were other than vacant. Moreover, entered into evidence was a letter sent by Landlord bearing appellee's exact street address in Pueblo, Colorado, dated April 3, 1987, two days after entry of a default judgment in the eviction action.[3] The letter referred to a "problem [with appellee's] mailing address," noting that "[m]ail sent to 800 Randolph Street is being returned to us," [4] and that he should "arrange to have [his] name put on the mail box" there. Following the entry on April 1, 1987, of the default judgment against appellee, the United States Marshal's office carried out the eviction by removing appellee's possessions from the premises. Subsequently, claiming he had never received notice of the action pending against him, appellee moved to vacate the default judgment, quash service and be restored to possession. On July 23, 1987, the trial court, after holding an evidentiary hearing, granted the relief sought by appellee. Landlord appealed to this court.

## II

The statute generally governing the service of summons in an action for restitution of possession is D.C.Code § 16–1502 (1988 Supp.), which reads:

> The summons provided for by section 16–1501 shall be served seven days, exclusive of Sundays and legal holidays, before the day fixed for the trial of the action. If the defendant has left the District of Columbia, or cannot be found, the summons may be served by delivering a copy thereof to the tenant, or by leaving a copy with some person above the age of sixteen years residing on or in possession of the premises sought to be recovered, and if no one is in actual possession of the premises, or residing thereon, by posting a copy of the summons on the premises where it may be conveniently read. If the summons is posted on the premises, a copy of the summons shall be mailed first class U.S. mail, postage prepaid, to the premises sought to be recovered, in the name of the person known to be in possession of the premises, or if unknown, in the name of the person occupying the premises, within 3 calendar days of the date of posting.

Landlord in essence argues for a literal interpretation of the statute. He asserts that since, at the commencement of the action, the defendant undeniably had "left the District of Columbia", and no one was "in actual possession of the premises, or residing thereon," service by posting, with the concomitant required mailing to the premises, was a valid form of service.

---

**2.** The record contains a pre-printed affidavit form signed by the process server with the pertinent dates filled in, stating that on March 18th, 1987, he "personally tried to serve a copy on the Defendant at the Defendant's address by knocking at the door," and that "[t]he Defendant did not respond." On March 20, 1987, the "second attempt to serve process," he "posted a copy of the summons and complaint ... on the exterior of the Defendant's door." The affidavit also states that "[i]n addition to the service noted above, a copy of the complaint and summons was mailed to the defendant(s) at the address possession of which is sought."

**3.** The letter, however, failed to mention the fact of the default judgment. In addition, the letter stated that "February and April 1987 rent" was owed, curiously omitting reference to any delinquency in payment of March rent, even though

the basis for the default judgment was an action for non-payment of March rent.

**4.** However, neither the complaint and summons mailed to the premises pursuant to D.C.Code § 16–1502 nor the writ of restitution similarly mailed were returned undelivered by the postal service. The property manager of the premises submitted an affidavit stating that "prior to the eviction" (but apparently subsequent to the default judgment and issuance of the writ of restitution) he had attempted to contact appellee but the telephone number given to him by appellee had been disconnected. Appellee testified at the hearing to vacate the default judgment that his telephone number had been changed in February 1987 and he had given the property manager the new number. Landlord presented no testimony at the hearing.

Appellee, on the other hand, argues that such steps alone, in the circumstances of this case, are constitutionally deficient under his due process right to notice, since such steps were not "reasonably calculated under all the circumstances to apprise [him] of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). This principle has been consistently applied in a long series of subsequent cases. *See, e.g., Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (notice by publication not sufficient to satisfy due process rights of creditors in probate actions where creditor's identity known or reasonably ascertainable); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (notice by publication not sufficient where mortgagees of property to be sold for nonpayment of taxes reasonably identifiable); *Greene v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982) (merely posting summons on door of tenant's apartment inadequate means of providing notice in forcible entry and detainer actions) [5]; *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (notice of forfeiture proceedings insufficient where state served notice by certified mail to appellant's home address pursuant to vehicle forfeiture statute, where state knew appellant was not at that address but in jail facility); *Covey v. Town of Somers*, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (notice by mailing, posting and publication inadequate in town forfeiture action where town knew individual was incompetent and without the protection of a guardian).

■ We need not reach the constitutional issue on the facts before us. The jurisprudence of the District of Columbia has firmly established the principle that service by posting in eviction actions is a bottom choice. *Alexander v. Polinger Co.*, 496 A.2d 267, 270 (D.C.1985) ("least preferred form of service"); *Parker v. Frank Em-*

*met Real Estate*, 451 A.2d 62, 64 (D.C. 1982) ("least favored form"); *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 104, 430 F.2d 474, 477 (1970) ("last resort"). Thus, although the statute does not expressly so require, it is a prerequisite to posting that a "diligent and conscientious effort" be made by the process server to either find the defendant to effect personal service or to leave a copy of the summons with a person "residing on or in possession of the premises." *See, e.g., Parker v. Frank Emmet Real Estate, supra; Westmoreland v. Weaver Brothers, Inc.*, 295 A.2d 506, 509 & n. 12 (D.C.1972). As the court said in *Dewey v. Clark*, 86 U.S.App. D.C. 137, 139, 180 F.2d 766, 768 (1950), the statute reflects an underlying assumption by Congress that "ordinarily one in possession or residence [can] be found and served in person, particularly in an action for possession."

■ Thus, we are faced here with the question whether a landlord who knows that a tenant is outside the District and who has been unsuccessful in finding anyone else residing or in possession of the premises may, without more, resort to posting even though he has actual knowledge of the place where the defendant may be found outside the District, and where his inability to locate anyone residing on the premises raises a good likelihood that the premises are in fact vacant and that posting and mailing notice thereof to that address will be ineffective in providing notice. We do not think the legislature intended that the statute be read in such a wooden manner as would authorize posting in such circumstances. Rather, in these circumstances, the concept of a diligent and conscientious effort that permeates the statute as a prerequisite to posting requires more.

In particular, unlike the situation that apparently existed when the statute was originally adopted in 1888 to permit posting for an absent defendant, there now exists at least one feasible statutorily-based alternative to posting which might have been employed by Landlord here. In 1970, as

---

**5.** Perhaps in response to this decision, the mailing requirement now contained in the last sentence of § 16–1502 was added by amendment in 1984.

part of the Court Reorganization Act, a "long-arm" statute was added to the D.C. Code to provide for "civil jurisdiction and service outside the District of Columbia." §§ 13–401, 13–434 (1981). The statute, which is based upon the Uniform Interstate and International Procedure Act, *see* D.C. Code § 13–402 (1981); *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 159 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), covers, *inter alia*, claims arising from a person's "having an interest in, using, or possessing real property in the District of Columbia," § 13–423(a)(5), and authorizes service outside the District of Columbia through several different mechanisms, including "by any form of mail addressed to the person to be served and requiring a signed receipt." §§ 13–424, 13–431(a)(3).

Nor does it appear that § 16–1502 need be construed as to preclude such a form of service.[6] Section 13–401 specifically provides that "[e]xcept in cases of irreconcilable conflict, this chapter shall be construed to augment ... other law[s] of the District of Columbia" dealing with service.[7] Thus, in *Liberty Mutual Insurance Co. v. Burgess*, 308 A.2d 775 (D.C.1973), we held that the new provision dealing with out-of-state service provided independent, alternative modes for acquiring personal jurisdiction to those set forth in the Motor Vehicle Safety Responsibility Act. We see no reason why the same reasoning should not apply here.

We are not unmindful of the practical problems faced by landlords in dealing with eviction situations and the need for their expeditious resolution. Certainty as to the requirements for effecting valid service of process is of course a desirable goal in actions which number in the tens of thousands annually. However, as indicated, this area has significant constitutional overtones. *See, e.g., Tulsa Professional Collection Services, supra,* 108 S.Ct. at 1347–48 (rejecting on due process grounds argument that "a pressing need to proceed expeditiously justifies less than actual notice" where defendant's identity known or "reasonably ascertainable"). Furthermore, the "diligent and conscientious" requirement as a prerequisite to posting has been imbedded in our jurisprudence for decades. We simply make what we think is a commonsense application of that principle to the facts here.

*Affirmed.*

---

6. The first sentence of that section speaks generally of the service of summons without specificity as to the manner thereof, and the second sentence uses the word "may" in providing for service by posting. Nor, even assuming a rule could impose such a limit, does Super.Ct. L & T R. 4 seem to absolutely preclude the use of the statutorily-sanctioned alternative mode of service under the circumstances here.

7. The presence of such language thus differentiates this situation from, *e.g., Graham v. Bern-* stein, 527 A.2d 736 (D.C.1987), holding that the specific requirements of D.C.Code § 45–1406 (1981) for service of a notice to quit must be followed rather than the more general provision contained in the Rental Housing Act. D.C.Code § 45–1406 (1981). Furthermore, D.C.Code § 45–1406 by its terms refers to "[e]very notice to quit" and uses the word "shall" rather than the "may" of D.C.Code § 16–1502.