RESTAURANT EQUIPMENT AND
SUPPLY DEPOT, INC., et. al.,
Appellants,

v.

Osvaldo GUTIERREZ,
et. al., Appellees.

No. 01–CV–774.

District of Columbia Court of Appeals.

Argued April 22, 2004.
Decided July 1, 2004.

Tamir D. Damari, with whom Stanley H. Goldschmidt, Washington, DC, was on the brief, for appellants.

Leizer Z. Goldsmith, with whom Karen Bower, Washington, DC, was on the brief, for appellees.

Before RUIZ and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

WASHINGTON, Associate J.

The trial court entered a default against Restaurant Equipment and Supply Depot, Inc., *et. al.*, ("appellants") because they failed to timely file an answer to appellees' complaint. On appeal from the subsequently-entered judgment, appellants argue that the trial court lacked authority to enter the default under Super. Ct. Civ. R. 55(a) because appellants had otherwise defended against the plaintiff's claims by timely filing a motion to dismiss. In addition, appellants argue that even if the trial court were empowered to enter the default, the trial court abused its discretion in not vacating it pursuant to Super. Ct. Civ. R. 55(c). Because Super. Ct. Civ. R. 12(a)(5) required the trial court to enter a default in this case, and because appellants have failed to show good cause to justify vacating the entry of default, we affirm.

## I.

On February 16, 2000, Osvaldo Gutierrez, *et. al.*, ("appellees") filed a complaint against appellants alleging, *inter alia*, violations of the District of Columbia Wage and Hour Laws and the District of Columbia Human Rights Act, in addition to battery. On April 17, 2000, two days before the deadline for appellants' responsive pleading, appellants filed a request for an extension of time to respond. After an additional request for enlargement of time to respond, appellants timely filed their motion to dismiss on May 5, 2000. Appellees filed an opposition to this motion on May 24, 2000 and appellants noted a reply on June 5, 2000.

At the initial status conference held on May 19, 2000, the trial court issued a scheduling order which set the following

deadlines: (1) written discovery requests and exchange of witness lists were due by July 19, 2000; (2) written discovery responses were due by August 19, 2000; and (3) discovery closed on September 19, 2000. In accordance with the scheduling order, appellees served appellants their written discovery requests and witness list on July 19, 2000. Appellants, however, did not comply with the scheduling order. Instead, they filed a praecipe to the court on July 19, 2000 indicating that "since [appellants] have filed a Motion to Dismiss, which is still pending, it does not make sense to undertake discovery until this Court rules on the dispositive Motion." After the trial court's law clerk informed appellants that the praecipe would not forestall discovery, appellants commenced the untimely preparation of written discovery requests and served same upon appellees on August 4, 2000. Appellants did not respond to appellees' written discovery requests by the August 19, 2000 deadline, nor did appellees respond to appellants' untimely requests. When discovery ultimately closed on September 19, 2000, appellants still had not produced the requested discovery.

In the meantime, the trial court had denied appellants' motion to dismiss on September 11, 2000, which triggered appellants' obligation to file an answer within ten days pursuant to Rule 12. Appellants did not file an answer within the requisite time period, nor did they seek additional time to file their answer. Rather, on September 19, 2000, appellants filed a motion seeking a sixty-day extension of the discovery deadline for both parties. On the same date, appellees filed a motion for enlargement of time, seeking to extend the discovery deadline for appellees only. The trial court denied appellants' motion on October 10, 2000 and appellees' motion on October 16, 2000. The parties vigorously litigated the issue of discovery throughout November.

On December 11, 2000, appellees filed a praecipe requesting entry of a default judgment against the appellants under Rule 55(a). On December 13, 2000, appellees filed a motion for entry of a default judgment, citing appellants' failure to file an answer, comply with the scheduling order, and respond to properly propounded discovery requests. After reviewing the file and determining that there was neither an opposition nor an answer to the complaint in the court file, the trial court entered a default against appellants on January 4, 2001, and scheduled a hearing for *ex parte* proof of damages. In lieu of the *ex parte* hearing, a jury trial on damages was held in April 2001. After the jury returned its verdict in favor of appellees, the trial court entered a judgment against appellants on May 3, 2001.

Prior to the entry of judgment, however, on January 17, 2001, appellants filed a motion to vacate the trial court's entry of default along with a verified answer. In their motion to vacate, appellants attacked the entry of default on two fronts. First, appellants argued that the trial court did not have authority to enter the default under Rule 55(a) because appellants had already noted an appearance in the case by filing numerous motions. Second, appellants argued that they met the requirements for vacating the entry of default under Rule 55(c) which gives the trial court discretion to set aside the entry of default "[f]or good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part." In order to establish good cause, appellants offered the following explanation for their failure to file an answer:

Firstly, [appellants] respectfully submit that their delay in filing their Answer has not been due to a willful disregard or neglect of this Court's Rules. Between September 11, 2000 and the pres-

ent, the undersigned has, for lack of a better word, been preoccupied with other aspects of this case, and, as a result, has unfortunately and inadvertently failed to timely file [appellants'] Answer.... In the midst of dealing with all of these [discovery] issues, the undersigned unfortunately failed to realize that the time for [appellants] to file their Answer had expired.

The trial court later explained that it denied this motion "because no answer had been timely filed and because [appellants] failed to address this issue." Additionally, the court clarified that the entry of default was not a discovery sanction, but "an order based upon [appellants'] failure to answer the complaint or to request an extension of time in which to do so."

On January 22, 2001, appellants sought an extension of time to reply to appellees' already-granted default motion, arguing that they had not, in fact, received a copy of that motion until after the trial court had issued its ruling and, therefore, were entitled to additional time to respond. Before the court had even ruled on their motion for an extension of time, appellants filed an opposition to appellees' motion for entry of default on January 25, 2001. The trial court denied appellants' motion for an extension of time as moot and disregarded the improperly-filed opposition.

Not to be deterred, on March 7, 2001, appellants filed a motion for reconsideration of the trial court's entry of default. In this motion, appellants reiterated that they did not believe the trial court had authority to enter a default for failure to answer where they had already appeared in the case. Additionally, appellants argued that there was good cause to vacate the entry of default (although they did not expressly use the term "good cause" in

their motion). First, appellants explained that they had not filed a response to appellees' motion for default because they had not received a copy of the document until three weeks after it was filed. Appellants also attached a letter from their attorney's physician which requested that the attorney be given "latitude" with respect to deadlines as a result of a "stress condition" that had persisted since June 2000.[1] Finally, appellants asserted that appellees would not be prejudiced if the court were to vacate the default because appellees had also caused delays in the case. After the trial court denied their motion for reconsideration and entered a judgment against them, appellants noted the instant appeal.

## II.

■ Appellants maintain that the trial court abused its discretion both in entering and refusing to vacate the default. In order to determine whether the trial court abused its discretion in entering a default because appellants failed to timely file an answer, we look first to Rule 55(a). *See Digital Broadcast Corp. v. Rosenman & Colin, L.L.P.*, 847 A.2d 384, 388–89 (D.C. 2004). Under Rule 55(a), the trial court *must* enter a default when a defendant has "failed to plead or otherwise defend." *See id.* at 388; Super. Ct. Civ. R. 55(a).

Even though appellants concede that they did not timely file an answer, they contend that by filing their motion to dismiss they have "otherwise defend[ed]," thus preventing the court from entering a default. In support of this argument, appellants cite to both legal commentary and case law interpreting Rule 55 of the Federal Rules of Civil Procedure, the model upon which our local rule is based. According to the legal commentary about

---

**1.** Appellants explained that they had not disclosed this condition earlier because counsel "would like to reserve some modicum of a 'zone of privacy' and did not want to concede that his work habits had to be curtailed."

Federal Rule 55(a), the phrase "plead or otherwise defend" is interpreted disjunctively so that entry of default is inappropriate where the defendant has *either* properly plead *or* otherwise defended. *See, e.g.,* 10 MOORE'S FEDERAL PRACTICE § 55.10[2][b] (3d ed. 2004); Fed. R.Civ.P. 55(a). Citing a number of state and federal cases, appellants ask us to find that their motion to dismiss is evidence of their intent to "otherwise defend," precluding a default under Rule 55(a) for failure to file an answer. *See, e.g., United States v. Caldwell,* No. 3:92–CV–1045–H, 1992 U.S. Dist. LEXIS 2015 (N.D.Tx. Dec. 22, 1992); *Equal Employment Opportunity Comm'n v. Southwest Group Fin., Inc.,* No. H–78–1881, 1980 U.S. Dist. LEXIS 10553 (S.D.Tx. Jan. 25, 1980); *Tapp v. Fowler,* 291 Ark. 309, 724 S.W.2d 176 (1987); *First Southwestern Fin. Servs. v. Laird,* 882 P.2d 1211 (Wyo.1994).

■ If our analysis were controlled solely by considering Rule 55, appellants' argument would be persuasive. However, unlike the state and federal rules involved in the cases cited by appellants, our local rules contain an additional provision that authorized the court to enter a default under the circumstances in this case. The local rule in question is Rule 12(a)(5), which establishes that any failure to comply with the requirements of Rule 12 "shall" result in the entry of a default unless otherwise ordered by the court.[2] Super. Ct. Civ. R. 12(a)(5). In this case, Rule 12(a) required appellants to file an answer "within ten days" after receiving notice that the court had denied their motion to dismiss.[3] By not answering the complaint within this ten-day period, appellants failed to comply with the mandates of Rule 12(a), and therefore the trial court was permitted to enter a default pursuant to Rule 12(a)(5).[4]

■ Despite the plain language of Rule 12(a)(5) which authorized the entry of default in this case, appellants argue that our holding in *Iannucci v. Pearlstein,* 629 A.2d 555 (D.C.1993), commands a different result. We disagree. In *Iannucci,* after the defendant filed two answers that were later stricken for various procedural defects, the trial court entered a default against her for failing to answer. Determining that "her failure to file a valid answer constituted a technical rather than an actual failure," *id.* at 558, we held that the defendant was not in default under Rule 12(a). Here, in contrast to *Iannucci,* appel-

---

**2.** *See* Super. Ct. Civ. R. 12(a)(5) ("Except where the time to respond to the complaint has been extended as provided in Rule 55(a), failure to comply with the requirements of this Rule shall result in the entry of a default by the Clerk or the Court sua sponte unless otherwise ordered by the Court.").

**3.** Super. Ct. Civ. R. 12(a) provides:
(a) *When presented.* (1) Unless a different time is prescribed in an applicable statute, a defendant shall serve an answer within 20 days after being served with the summons and complaint.
※ ＊ ＊ ＊ ＊ ＊
(4) Unless a different time is fixed by Court order, the service of a motion permitted under this Rule alters these periods of time as follows:

(A) if the Court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the Court's action....

**4.** Appellants further argue that the trial court should have considered "lesser sanctions" before entering a default in this case. This argument is without merit because the default was not entered as a sanction in this case. The trial court made it quite clear that the entry of default was a result of appellants' failure to timely answer the complaint, and was not a sanction under Rule 37. Therefore, the trial court did not need to consider lesser sanctions before entering the default. *See generally, Digital Broadcast Corp.,* 847 A.2d at 388–89.

lants' failure to file an answer was not merely "technical." Appellants filed no answer whatsoever. Therefore, the trial court did not abuse its discretion in entering the default against appellants.[5]

### III.

■ Appellants also contend that the trial court abused its discretion in denying their motion to vacate the default entered against them. In this case, where the default was entered solely because appellants failed to answer the complaint, Rule 55(c) sets forth the standard the trial court must apply when deciding whether to vacate the entry of default.[6] According to Rule 55(c), the court may set aside a default "[f]or good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part...." Super Ct. Civ. R. 55(c). Thus, at a minimum, a party seeking to have the entry of default vacated under Rule 55(c) must do two things: (1) establish good cause for vacating the default, and (2) file a verified answer presenting an adequate *prima facie* defense. *See Digital Broadcast Corp.*, 847 A.2d at 389–90; *see also Pelkey v. Endowment for Cmty. Leadership*, 841 A.2d 757, 759 (D.C. 2004).

■ Although we have not squarely defined "good cause," our cases establish that good cause is to be determined "in the light of the circumstances of each case." *Leiken v. Wilson*, 445 A.2d 993, 1000 (D.C. 1982). In making that determination, this court has always found the moving party's

---

5. Although the trial court may, in its discretion, enter a default under Rule 12(a) when a party who has "otherwise defended" against the complaint nevertheless fails to comply with the requirements of Rule 12, the trial court is *required* to enter a default if it finds that a party has wholly failed to respond to a complaint, either by pleading or otherwise defending against the complaint, within the meaning of Rule 55(a). *See Digital Broadcast Corp.*, 847 A.2d at 389 (noting that a party defaulted under Rule 55 "has indicated by its behavior that it has no valid defense").

6. In their brief, appellants cite to a number of cases involving the standards applicable to vacating default judgments. These cases are irrelevant here, because we are deciding whether the court should have vacated the entry of default. "A default entered by the Clerk pursuant to Super. Ct. Civ. R. 55(a) is distinct from a default judgment entered pursuant to Super. Ct. Civ. R. 55(b)(2) and must be treated separately." *Clark v. Moler*, 418 A.2d 1039, 1042 (D.C.1980) (citation omitted). Unlike a default judgment, the entry of a default "simply precludes the defaulting party from offering any further defense on the issue of liability." *Lockhart v. Cade*, 728 A.2d 65, 68 (D.C.1999) (citation omitted). A default is interlocutory in nature and "operates as an admission by the defaulting party that there are no issues of liability, but leaves the issue of damages unresolved until the entry of judg-

ment...." *Id.* (citing 46 AM. JUR. 2D *Judgments* § 266, at 579 (1994)).

Different standards, therefore, govern the trial court's discretion in deciding whether to vacate the entry of default as opposed to a default judgment. We have said that the standard for vacating entry of default is more lenient than the standard for vacating a default judgment which "can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders." *Miranda v. Contreras*, 754 A.2d 277, 280 n. 4 (D.C.2000) (citation omitted). This does not mean, however, that the standards are interchangeable. Different factors are considered under Rule 60(b) and Rule 55(c). For instance, when vacating a default judgment under Rule 60(b), the court considers whether the moving party "(1) received actual notice of the proceeding; (2) acted in good faith; (3) presented a prima facie adequate defense; and (4) acted promptly upon discovery of the judgment." *Clark, supra*, 418 A.2d at 1043. Additionally, the court considers whether the non-moving party would suffer any prejudice as a result of the judgment being vacated. *Id.* In contrast, a trial court may vacate the entry of default under Super Ct. Civ. R. 55(c) for "good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part."

reasons for failing to plead or otherwise defend to be a key consideration. *See Digital Broadcast Corp.*, 847 A.2d at 389. Here, appellants have said that their primary reason for failing to file an answer was that they inadvertently "forgot" to file it.[7] To accept such an excuse as "good cause" for vacating an entry of default, however, would "negate the meaning of the words." *Morgan v. Barry*, 785 F.Supp. 187, 198 (D.D.C.1992). Regardless, appellants conceded at oral argument that they were *aware* of their failure to file the answer as early as December 15, 2000, and had received a copy of appellees' praecipe around the same time, nearly three weeks before the trial court entered the default. Therefore, "inadvertence" cannot explain appellants' failure to file an answer during this period of time.[8] Because appellants simply have not shown good cause for vacating the default, we are satisfied that the trial court did not abuse its discretion in denying appellants' motion.

*Affirmed.*

7. Appellants claim that counsel's "stress condition" somehow contributed to their failure to file an answer; however, they are unable to explain exactly how the two are causally related. In addition, appellants present a number of excuses for their failure to file an answer that were not presented to the trial court, including: (1) they were short-staffed because one of their associates left the firm during the litigation, (2) they inadvertently failed to "calendar" the due date for the answer, (3) appellees failed to notify them that their answer was delinquent between September 29, 2000 and December 11, 2000, (4) they forgot about the answer during the long pendency of their motion to dismiss, and (5) they were unable to contact their clients during the holiday season and were unable to finish

the answer. We need not consider these excuses, however, because they were not properly raised in the trial court. *See Pelkey, supra*, 841 A.2d at 760 n. 3 (citations omitted).

8. Appellants have suggested that we should consider their allegedly meritorious defense in our assessment of whether the trial court had "good cause" to vacate the default. Because this court has interpreted Rule 55(c) as requiring a showing of good cause in *addition* to an answer setting forth a *prima facie* defense, *see Digital Broadcast Corp.*, 847 A.2d at 389–90, we do not consider the contents of appellants' defense in our evaluation of "good cause."